Victor J. Sandoval (SBN 344461)
**ALMEIDA LAW GROUP LLC**
3415 S. Sepulveda Blvd., Suite 1121
Los Angeles, California 90034
Telephone: (562) 534-5907
victor@almeidalawgroup.com

[Additional Attorneys Listed on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FABIAN FLORES, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>ECOFLOW TECHNOLOGY, INC.,<br><br>Defendant. | Civil Action No.: 3:26-cv-8751<br><br>**CLASS ACTION COMPLAINT**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Fabian Flores, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant EcoFlow Technology, Inc. ("Defendant" or "EcoFlow") and makes the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This is a case concerning deceptive representations and omissions made by Defendant through its misleading and unlawful pricing, sales, and discounting practices on its websites, which directly violate a California statute and deceive the reasonable consumer.

2. Defendant EcoFlow sells and markets generators and power supply devices online through the EcoFlow website, https://www.us.ecoflow.com/.

3. EcoFlow lists many of its products as having continuous discounts, some even hundreds of dollars off. However, these discounts are actually false discounts intended to induce customers into purchasing their products, as the products are rarely, if ever, actually sold at the higher strikethrough "former" prices listed next to the "sale" price.

4. The products at issue are all goods that have been offered at any time on EcoFlow's website, at a sale or discounted price from a supposedly higher "former" price (the "Products").

5. Defendant's website lists various items on sale or discount, and presents a stricken, supposedly former or prevailing market price next to the "sale" price. However, the former or prevailing market price listed next to the sales price is not actually the former or prevailing market price at which the product was sold in the previous three months. Instead, it is a false or inflated price used to trick consumers into believing they are receiving a discount on their purchase. It is false because the item has not been listed for sale or sold on the website in the previous three months at the listed former price.

6. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

7. Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price

… within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501. Therefore, the statute specifically prohibits the type of fake discount employed by Defendant, where the advertised former price is not the prevailing price during the specified timeframe.

8. Upon investigation, all or nearly all of the "former" prices on the website are false and misleading, and are not former prevailing prices at which the products were offered on the websites, or the prevailing market prices, during the previous three months.

9. Plaintiff—like thousands of other customers across the United States—fell prey to Defendant's false, deceptive, and misleading discount scheme. As a result, Defendant has earned millions of dollars selling products at misrepresented discounts that do not actually exist.

10. When purchasing the Products, Plaintiff relied on Defendant's misrepresentations that the Products were on sale and were previously sold at the former strikethrough price listed next to the sale price.

11. Defendant's conduct violated and continues to violate the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; and the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*. Defendant's conduct also constitutes negligent misrepresentation, and has unjustly enriched Defendant by the sale of these Products.

12. Accordingly, Plaintiff brings this civil action to put an end to Defendant's illegal conduct. Through this class action lawsuit, Plaintiff seeks monetary damages, restitution, and declaratory and injunctive relief on behalf of the proposed Class.

## PARTIES

13. Plaintiff Fabian Flores is a citizen and resident of Alameda County, California.

14. Defendant EcoFlow Technologies, Inc., is a Delaware corporation and is headquartered in Washington State. Defendant is an online retailer that sells solar panels, generators, power stations, and other energy generating equipment in California and across the United States.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because this is a class action in which (1) there are at least 100 members, (2) the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and (3) Plaintiff and members of the putative Class are citizens of a state that is different from the states in which Defendant are citizens.

16. This Court has personal jurisdiction over Defendant because Defendant has contacts with California that are so continuous and systematic that it is essentially at home in this state. Defendant sold Products to consumers in California, including Plaintiff. Defendant regularly conducts and solicits business in California, provides products to persons in the State of California, maintains an interactive commercial website, offers to ship products to California, allows customers in California to order products, and derives substantial revenue from customers in California.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's and the Class Members' claims occurred in this District, and Defendant is subject to the Court's personal jurisdiction.

## DIVISIONAL ASSIGNMENT

18. The action is properly assigned to either the Oakland or San Francisco Division, under Civil L.R. 3-2(d), as Plaintiff currently resides in Alameda County and the events giving rise to this cause of action occurred in San Francisco County.

## BACKGROUND FACTS

19. Defendant markets and sells solar panels, generators, power stations, and other energy-generating equipment and products through its website.

20. Defendant, through its website, has sold thousands of units of merchandise to customers in California and nationwide.

### I. EcoFlow's Fake Discount Scheme

21. Defendant creates the false impression that its Products' regular or former prices are higher than they truly are.

22. On any given day, Products on Defendant's website are represented as being discounted from a higher reference, or "former," price. On individual listing pages and category listing pages, the supposed mark-downs are represented to consumers by prominently displaying a "discount" amount in the top corner of a product listing, and depicting the discount number in bright red on the corner of the listing, with the sale price in black text at the bottom of a listing or by providing the "former" price in strikethrough font, with the sale price beside it. Example screenshots are provided below:[1]







---

[1] The first image was retrieved from the WayBack Machine, from an image taken on February 6, 2026. The second image was retrieved from Defendant's website on August 20, 2026.

23. The above images are just examples from Defendant's website that shows how it uses this "false discount" pricing as a selling point: purportedly giving Plaintiff and the Class almost $4,000 or more in discounts.

24. These pricing and advertising practices are deceptive and pressure consumers into purchasing products from Defendant at an inflated price. Defendant intends to mislead consumers into believing that they are getting a bargain by buying products from its website on sale and at a substantial and deep discount. For most if not all products listed at a discount, Defendant did not offer or sell the products on the website at the reference price for the three months immediately preceding the listing of the sale. Therefore, the reference price is artificially inflated and the advertised discounts are deceiving.

25. For example, the three items in the first photo at ¶ 22 have been listed as discounted, as seen in this image from February 2026, but even reaching far back into EcoFlow's website, they have *always* been listed as such.

26. For example, on January 29, 2026:



27. And on December 30, 2025:




28. And on November 1, 2025:



29. And on October 17, 2025:




30. Each of these screenshots apparently articulates a "sale" price for each of EcoFlow's DELTA Pro Portable Power Station; EcoFlow's DELTA Pro Ultra + 2 x DELTA Pro Ultra Extra Battery (1 x Inverter + 3 x Batteries); and EcoFlow DELTA Pro Ultra + 3 x DELTA Pro Ultra Extra Battery (1 x Inverter + 4 x Batteries). But a comparison quickly shows the "discount" is fictitious, as the Products have never been offered for a discount.

31. On January 29, 2026, the EcoFlow DELTA Pro Portable Power Station was offered for $1,599.00; on December 30, 2026, the same Product had been offered for a *lower* price, at $1,399.00, the same price it had been offered since October 2025. Yet, throughout this period of time, EcoFlow never advertised the Power Station as being for the price without the apparent "discount."

32. On January 29, 2026, the DELTA Pro Ultra + 2 x DELTA Pro Ultra Extra Battery (1 x Inverter + 3 x Batteries) was offered for $8,099.00; on December 30, 2026, the same Product had been offered for a *lower* price, at $7,999.00; this itself was a discount of its price in November and October of $8,299.00. But never once was it offered for sale at the price without the apparent "discount" in red.

33. On January 29, 2026, the EcoFlow DELTA Pro Ultra + 3 x DELTA Pro Ultra Extra Battery (1 x Inverter + 4 x Batteries) was offered for $11,999.00; it had been this price since October 2026. Throughout this period of time, EcoFlow never advertised the Power Station as being for the price without the apparent "discount."

***A. Plaintiff Flores Purchased Products that Defendant Falsely Advertised as Discounted.***

34. On or around May 12, 2026, Plaintiff purchased the EcoFlow DELTA Pro Portable Power Station for $1,899.00 from Defendant's website. He made this purchase while living in San Francisco County, California.

35. At the time of purchase, Defendant advertised the EcoFlow DELTA Pro Portable Power Station as having a reference or "regular" price of $4,899.00, making the $1,899.00 price an apparent discount of $3,000.00.

36. At the time of purchase, Defendant represented on its website that this product was on sale at a discount of $3,000.00. However, the $4,899.00 reference price was false, as Defendant has not ever listed the Product at this price, and the discount is completely fabricated.

37. The falsity of the reference price is demonstrated by the images below, archived on April 18, 2025:




38. As already seen, for the next eight months, EcoFlow advertised the DELTA Pro Portable Power Station as being no *more* than $1,899.00 at any time, and in fact changed its

"purported" discount amount in an apparent scheme to inspire urgency and anxiety to purchase among its consumer base.

39. For example, even over a year earlier, on April 18, 2025, the DELTA Pro Portable Power Station is listed as being $1,899.00 with a $3,000.00 discount, meaning the "regular" price of the Product, as advertised by EcoFlow, would be $4,899.00.

40. But later, in October 2025, EcoFlow advertises the same Product for $1,399.00 with an apparent $3,799 discount, which would make the regular price $5,198.00 – despite the Product never appearing at that price.

41. Just two months later, without changing the "sale" price of the Product, EcoFlow offers the same Product at a discount of $4,837.00, which would make the regular price of the Product $6,236.00 – however, the Product has never appeared for sale even close to that price.

42. This history clearly evidences the fictitiousness of Defendant's pricing practices: it raises the apparent "discount" in reference to a sale price, ratcheting up a "regular" price, but that price is a complete fabrication: in fact, Defendant has been selling the Product for *less* over time.

43. As evidenced by the coding of Defendant's own website, Defendant never intended to offer a real sale. An archive retrieved from the WayBack Machine shortly after Plaintiff made his purchase shows a website that has not fully loaded, demonstrating that the "regular price" and "sale price" are in fact, *identical*:



44. Defendants represented that the products that Plaintiff purchased had a certain regular or former price (the reference price) and that Plaintiff was receiving a substantial discount. At no point in the preceding three months since Plaintiff's purchase, or indeed long before that, was Plaintiff's purchased Product ever listed for $4,899.00.

45. Plaintiff relied on Defendant's representations on the website that the products he purchased were being offered at a discount and that previously they were listed and sold on the website at the stated reference price at any point immediately preceding Plaintiff's purchase.

46. In reality, the above-listed products Plaintiff purchased were not substantially marked down or discounted, and any discount he was receiving had been grossly exaggerated.

47. Defendant engages in a pervasive practice, both before and after Plaintiff's purchase, to not list or sell any of the products for sale on its website at the reference prices.

48. Plaintiff would not have purchased the Products, or would not have paid as much as he did, had Defendant been truthful. Plaintiff was persuaded to make his purchase because of the misleading sale based on false reference prices.

49. Plaintiff continues to be interested in purchasing products like those offered by Defendant at discounted prices, but he is unable to trust and rely on Defendant's advertising, so will not purchase the products from Defendant.

50. Absent injunctive relief, Plaintiff cannot know whether Defendant's former and regular prices represent honest prices at which the products were listed on the website within at least the three months prior to their purchase, or if the Defendant's sales are perpetual and misleading.

51. Upon information and belief, Defendant enacts the same false discount scheme with various Products listed on its website.

***B. The Reference Prices Are Not the Prevailing Market Price of the Products, Including During the Rolling 90-Day Period Prior to the Offering and/or Purchase***

52. Separately, the reference prices advertised on Defendant's website are not the prevailing market prices of the Products.

53. Some of the Defendant's discounted products are concurrently sold on the website and through other retailers. For these products, on information and belief, Defendant's advertised reference prices are higher than the prevailing market prices for the identical products. Because Defendant consistently sells the products at issue at prices significantly lower than its advertised former prices, there is no reasonable basis to believe that Defendant consistently sells its products at prices below the prevailing market prices. Economic principles dictate that in competitive markets, the actual prices offered by vendors selling the same item tend to converge to the market price.

54. Upon information and belief, the Products that are sold online are predominantly sold by Defendant on its website. To the extent the Products are sold through a third-party seller, the third-party seller's prices for the Product are not the prevailing market price. Furthermore, Defendant has an interest to, and upon information and belief does, exert control over the pricing of the sales of its products.

55. On information and belief, Defendant's advertised reference prices are unsubstantiated and based on an undisclosed formula, or are outdated, or are cherrypicked and thus not representative of the prevailing market prices. On information and belief, Defendant does not independently verify that the reference prices are the prevailing market prices at which the Products are listed for sale by Defendant or other retailers for a substantial period of time in substantial quantities. On information and belief, Defendant does not update the reference prices on a daily basis.

## II. Research Shows That Reference Price Advertising Influences Consumer Behavior and Perceptions of Value

56. The effectiveness of Defendant's deceitful pricing scheme is backed by longstanding research.

//

//

//

57. "By creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product."[2] Thus, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases."[3] For this reason, the Ninth Circuit has held that a plaintiff making a claim of deceptive pricing (similar to the claim at issue here) has standing to pursue his claim against the Defendant retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1106 (9th Cir. 2013).

58. "[D]ecades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal."[4] According to academic studies, "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high."[5]

59. Further, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

60. Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[6] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding

---

[2] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. Pub. Pol'y & Mktg. 52, 55 (Spring 1992).

[3] *Id*. at 56.

[4] Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, J. of Consumer Affairs, Vol. 36, No. 2, at 287 (Winter 2002).

[5] *Id*.

[6] Khalid Saleh, *How Discounts Affect Online Consumer Buying Behavior*, Invesp, June 16, 2024, https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/ (last visited August 6, 2026).

a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[7]

61. Another academic journal explains that "[r]eference price ads strongly influence consumer perceptions of value … Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when … the retailer highlights the relative savings compared with the prices of competitors … [T]hese bargain assurances (Bas) change consumers' purchasing behavior and may deceive consumers."[8]

62. "[R]esearch has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions."[9]

63. "[R]eference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product."[10] This study also concluded that "consumers are likely to be misled into a willingness to pay a higher price for a product simply because the product has a higher reference price."[11]

64. Accordingly, research confirms that deceptive advertising through false reference pricing is intended to, and does, influence consumer behavior by artificially inflating consumer perceptions of an item's value and causing consumers to spend money they otherwise would not

---

[7] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers PR NEWSWIRE (April 25, 2018), https://www.prnewswire.com/news-releases/retailmenot-survey-deals-and-promotional-offers-drive-incremental-purchases-online-especially-among-millennial-buyers-300635775.html#:~:text=In%2DLanguage%20News-,RetailMeNot%20Survey%3A%20Deals%20and%20Promotional%20Offers%20Drive%20Incremental%20Purchases%20Online,finding%20a%20coupon%20or%20discount. (last visited August 6, 2026).

[8] Joan Lindsey-Mullikin & ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. of Bus. Research 67 (January 2011).

[9] Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price On Consumer Price Expectations*, 79 J. of Retailing 225 (2003).

[10] Jerry B. Gotlieb & Cyndy Thomas Fitzgeral, *An Investigation Into The Effects of Advertised References Prices On the Price Consumers Are Willing To Pay For the Product*, 6 J. of App'd Bus. Res. 1 (1990).

[11] *Id.*

have, purchase items they otherwise would not have, and/or purchase products from a specific retailer.

***A. Consumers Suffered Harm***

65. Based on Defendant's advertisements, reasonable consumers would expect that the listed regular prices are the regular prices at which Defendant usually sells its Products.

66. Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular or former price is the advertised regular or former price and that they will receive the advertised discount from the regular or former purchase price

67. Plaintiff and consumers paid a "price premium" for the Products. If the reference prices were omitted from the product listings, Plaintiff would not have purchased the products, or would not have paid as much as she did.

68. Also, as further described above, Plaintiff and consumers are more likely to buy the Products if they believe that the product is on sale and that they are getting Products with a higher regular or former price at a substantial discount.

69. Thus, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above.

70. Therefore, Defendant's Products not only have a market value lower than the promised regular or former price; the value of the Products is also lower than the "sale" price. By using false reference pricing and false limited time sales, Defendant artificially drives up demand for the Products and by extension drives up the price of the Products. As a result, consumers were harmed because they received a product worth less than the price paid. Reasonable consumers would not have paid the prices charged had they known that products were rarely, if ever, offered for sale on the website at the reference prices.

71. An example illustrates this point. Assume a company knows a product will sell in the marketplace at $30. But to increase revenue, the company advertises the product as having a "regular" price of $100 and being on "sale" at 60% off (i.e., $60 off). Because consumers value products based on the regular price, and a sale conveys additional savings, the company can sell that $30 product for $40. Defendant has done so.

## III. Defendant's Deceptive Pricing Practices Violate Federal and California State Law

72. The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). Under 16 C.F.R. § 233.1, which is titled Former Price Comparisons, the FTC prohibits such misleading price comparisons as the ones employed by Defendant:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the ***former price*** is the actual, bona fide price at which the article was offered to the public ***on a regular basis for a reasonably substantial period of time***, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an ***artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction*** – the "bargain" being advertised ***is a false one***; the purchaser is not receiving the unusual value he expects.
>
> (b) A former price is not necessarily fictitious merely because no sales at the advertised price were made. The advertiser should be especially careful, however, in such a case, that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of her business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.
>
> (c) The following is an example of a price comparison based on a fictitious former price. John Doe is a retailer of Brand X fountain pens, which cost him $5 each. His usual markup is 50 percent over cost; that is, his regular retail price is $7.50 in order subsequently to offer an unusual "bargain," Doe begins offering Brand X at $10 per pen. He realizes that he will be able to sell no, or very few, pens at this inflated price. But he doesn't care, for he maintains that price for only a few days. Then he "cuts" the price to its usual level—$7.50—and advertises: "Terrific Bargain: X Pens, Were $10, Now Only $7.50!" ***This is obviously a false claim***. The advertised "bargain" is not genuine.

> (d) Other illustrations of fictitious price comparisons could be given. An advertiser might use a price at which he ***never offered the article at all***; he might feature a price which was ***not used in the regular course of business***, or which was ***not used in the recent past*** but at some remote period in the past, without making disclosure of that fact; he might use a price that was not openly offered to the public, or that was ***not maintained for a reasonable length of time***, but was immediately reduce.

16 C.F.R. § 233.1 (emphasis added).

73. The FTCA expressly prohibits the advertising of former fictitious prices, like the scheme employed by Defendant, regardless of whether the product advertisements and representations use the words "regular", "original", or "former" price:

> (e) If the former price is set forth in the advertisement, whether accompanied or not by descriptive terminology such as "Regularly," "Usually," "Formerly," etc., the advertiser should make certain that the former price is not a fictitious one. If the former price, or the amount or percentage of reduction, is not stated in the advertisement, as when the ad merely states, "Sale," the advertiser must take care that the amount of reduction is not so insignificant as to be meaningless. It should be sufficiently large that the consumer, if he knew what it was, would believe that a genuine bargain or saving was being offered. An advertiser who claims that an item has been "Reduced to $9.99," when the former price was $10, is misleading the consumer, who will understand the claim to mean that a much greater, and not merely nominal, reduction was being offered.

16 C.F.R. § 233.1.

74. Defendant's pricing scheme directly violates the FTCA.

75. In addition, Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

76. Section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertisement. Cal. Bus. & Prof. Code § 17501.

77. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

78. And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

79. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices without the intent to sell goods having those former prices. Defendant made false and misleading statements of fact concerning the reason for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful and deceptive business practices.

**IV. Defendant Breached Its Contract.**

80. When Plaintiff purchased Defendant's Product as described herein, he accepted an offer made by Defendant, forming a binding contract at the moment of purchase. The terms of that offer included a representation that the Product had the listed regular price and corresponding market value advertised on the Website, and a promise to provide that Product at the discounted price advertised at the time of purchase.

81. By advertising specific regular prices and corresponding discounted prices, Defendant represented that the value of the Product it was providing was equal to the advertised regular price, and agreed to provide Plaintiff that Product at a discount equal to the difference between the advertised regular price and the price Plaintiff actually paid.

82. For example, Defendant offered to provide the EcoFlow DELTA Pro Portable Power Station with a market value of $ 4,899.00, for a discounted price of $1,899.00; and to provide a discount of $3,000.00.

83. The regular price and market value of the items Plaintiff would receive, and the amount of the discount he would be provided off of the regular price of those items, were specific and material terms of the contract.

84. Plaintiff performed his obligations under the contracts by paying for the items he purchased.

85. Defendant breached its contracts by failing to provide Plaintiff with a Product that has a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised.

V. **There Is No Adequate Remedy At Law.**

86. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.

87. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.

88. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501.

89. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of his legal claims.

90. As a second example, to obtain damages under the CLRA, a plaintiff must show that they complied with the CLRA's notice requirement for damages. No such requirements exist to obtain restitution. Because a plaintiff must make this additional showing to obtain damages, rather than restitution, the legal remedies are more uncertain.

## CLASS ALLEGATIONS

91. Plaintiff brings this action individually and on behalf of all others similarly situated on behalf of himself and a Nationwide Class (the "Nationwide Class") and a California subclass

(the "California Class"; together with the Nationwide Class, the "Classes"). The proposed classes are defined as:

> **<u>Nationwide Class</u>**: All persons in the United States of America who, during the applicable limitations period, purchased one or more items from us.ecoflow.com, at a represented discount from a higher reference price.
>
> **<u>California Class</u>**: All persons in the State of California who, during the applicable limitations period, purchased one or more items from us.ecoflow.com, at a represented discount from a higher reference price.

92. Excluded from the Classes is Defendant, its subsidiaries and affiliates, officers, directors, the members of their immediate families, and any entity in which any Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

93. Plaintiff reserves the right to modify or amend the definition of the proposed Classes if necessary, before this Court determines whether certification is appropriate.

94. This case is properly brought as a class action under Fed. R. Civ. P. 23(b)(2) and (b)(3) and all requirements are met for the reasons set forth in the following paragraphs.

95. *Numerosity*. The members of the Classes are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to discovery, the Classes consist of many thousands of members, the identity of whom are within the exclusive knowledge of Defendant and can be ascertained only by resorting to Defendant's records, discovery, and other third-party sources.

96. *Commonality*. There are numerous questions of law and fact common to the Classes relating to Defendant's business practices challenged herein, and those common questions predominate over any questions affecting only individual members of the Classes. The common questions include, but are not limited to:

- Whether Defendant's labeling, advertising, and marketing of the Products is false and misleading;
- Whether Defendant advertised false reference prices on Products offered on the websites;

- Whether Defendant advertised price discounts from the false reference prices on the Products offered on the websites;
- Whether the Products listed on Defendant's websites were offered at their reference price for a reasonably substantial period of time during the three months prior to being offered at prices that were discounted from their reference prices;
- Whether the Products listed on Defendant's websites were offered at their reference price within the three months preceding purchases by Plaintiff and class members;
- Whether Defendant's misrepresentations were material to reasonable consumers;
- Whether Defendant engaged in unlawful or unfair conduct prohibited by the California UCL;
- Whether Defendant engaged in conduct prohibited by the California FAL;
- Whether Defendant violated the CLRA's prohibition on unfair methods of competition and/or unfair and deceptive practices;
- Whether Defendant violated the FTCA;
- Whether Defendant breached its contracts with members of the Classes;
- Whether Defendant harmed Plaintiff and members of the Class;
- the proper measure of damages; and
- the declaratory and injunctive relief to which the Classes are entitled.

97. *Typicality.* Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices engaged in by Defendant, as described herein.

98. *Adequacy of Representation.* Plaintiff is an adequate representative of the Classes because Plaintiff has sustained damages as a result of Defendant's uniform conduct. In addition:

- Plaintiff is committed to the vigorous prosecution of this action individually and on behalf of and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions;

- There is no hostility of interest between Plaintiff and the unnamed members of the Classes;
- Plaintiff anticipates no difficulty in the management of this litigation as a class action; and
- Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

99. *Predominance.* The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

100. *Superiority.* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation and since the financial resources of Defendant are significant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Classes will continue to suffer losses and Defendant's misconduct will proceed without remedy. In addition, even if members of the Classes themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

101. All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CAUSE OF ACTION
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**
**(On behalf of Plaintiff and the California Class)**

102. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

103. Plaintiff and Defendant are "persons" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17200.

104. The UCL defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

105. Defendant violated the UCL by engaging in "unlawful, unfair, and fraudulent business ats or practices" and engaging in "unfair, deceptive, untrue or misleading advertising," including advertising false and deceptive reference prices on its Products. Cal. Bus. & Prof. Code § 17200.

***a. Unlawful Prong***

106. As a result of engaging in the conduct alleged in this Complaint, Defendant has violated the UCL's proscription against engaging in "unlawful" conduct by virtue of their violations of the following laws:

(1) **California Bus. & Prof. Code § 17501**: As further detailed in this Complaint, Defendant violated California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 and 17501.

(2) **The Federal Trade Commission Act**: As detailed in this Complaint, Defendant violated 16 C.F.R. §§ 233.1 and 233.5.

(3) **Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)**: As alleged below, Defendant's conduct, individually and collectively, violates section 1770(a)(5), (7), (9), and (13) of the CLRA. Therefore, Defendant has also violated the UCL's "unlawful" provision.

107. Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date. Unless restrained and enjoined, Defendant will continue to engage in the unlawful conduct described herein.

108. Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the Class. As described herein, Defendant made false and deceptive advertisements and representations regarding the reference prices on the Products it claimed were on sale. But for

Defendant's unlawful and unfair conduct, Plaintiff and Class members would not have purchased the Products, or would not have paid as much as she did.

109. Plaintiff has suffered injury in fact and has lost money as a result of Defendant's conduct.

110. Accordingly, Plaintiff and Class Members seek restitution from Defendant of all money obtained from Plaintiff and the Class as a result of Defendant's unlawful acts.

***b. Unfair Prong***

111. As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "unfair" business practices.

112. Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

113. Defendant's unfair conduct alleged in the Complaint is illegal, deceptive, unethical, and unscrupulous. Under federal and state law, making false and deceptive claims about products being marketed and sold to consumers violates the UCL.

114. Defendant's deceptive marketing gave consumers the false impression that their products were regularly listed or sold on the websites for a substantially higher price in the recent past than they were and, thus, led to the false impression that Defendant's products were being sold at a discount to a regular price.

115. Furthermore these acts and practices offend public policy by violating the CLRA and the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code 17500, *et seq*.

116. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers.

117. Therefore, Defendant's conduct was and continues to be "unfair."

118. Defendant's violations of the UCL continue to this day. Unless restrained and enjoined, Defendant will continue to engage in the unfair conduct described herein. Plaintiff would consider buying again from Defendant's website if she knew that the pricing misrepresentations

were halted and if she had the opportunity to evaluation the actual prevailing price and actual discount prices of the Product.

119. Defendant's violations of the UCL continue to this day. Unless restrained and enjoined, Defendant will continue to engage in the unfair conduct described herein.

120. Defendant's conduct caused and continues to cause substantial injury to Plaintiff, as well as the Class members.

121. The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the unfair conduct described herein.

122. Accordingly, Plaintiff and the Class seek restitution from Defendant of all money obtained from Plaintiff and the Class members as a result of Defendant's unfair competition.

***c. Fraudulent Prong***

123. As a result of engaging in the conduct alleged herein, Defendant has violated the UCL's proscription against "fraudulent" business practices.

124. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant affirmatively misrepresented the reference prices of products which, in turn, misled and deceived consumers into believing that they were buying products at substantially discounted prices. Defendant's deceptive marketing gave consumers the false impression that its products were regularly listed or sold on the website for a substantially higher price in the previous three months. Because Defendant misled Plaintiff and members of the Class, Defendant's conduct was "fraudulent."

125. Defendant's advertisements concerning the reference price of Products on its websites were fraudulent business acts in violation of the UCL. These acts were reasonably likely to deceive consumers, and in fact did deceive Plaintiff and Class members and induce them into purchasing Defendant's Products.

126. Defendant knew its Products were not actually sold at the higher reference price for a three-month period preceding Plaintiff's and Class members' purchases.

127. Defendant had a duty to disclose the truth about its pricing deception, including that the reference prices advertised on its website were not, in fact, prices at which Defendant's items were listed or sold on the website in the previous three months, but in truth, the products never (or rarely) were offered or sold at the reference prices.

128. Defendant made these statements with the intention that Plaintiff would see them and rely on them to purchase its Products, and, in fact, Plaintiff did rely on Defendant's fraudulent misrepresentations on Defendant's websites when purchasing the Product.

129. If not for Defendant's fraudulent acts and practices, Plaintiff would not have purchased the Products, or alternatively would not have paid as much as she did.

130. As a result, Plaintiff and Class Members suffered substantial injury and lost money due to Defendant's conduct.

131. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and Class Members.

132. Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future.

133. Plaintiff has no adequate remedy at law to address Defendant's unlawful conduct. The legal remedies available to Plaintiff are not equally ripe, prompt, certain, efficient, or complete as equitable relief, including as to the applicable statutes of limitation, such that equitable relief may reach transactions for which no legal remedy exists. *Compare* Cal. Bus. & Prof. Code § 17208 (four-year limitations period) *with* Cal. Civ. Code § 1783 (three years). Whereas equitable claims may be tried by the court, legal claims are tried by jury, which may result in delay or additional expense. Further, the Court's discretion in fashioning equitable relief extends broader than legal damages and can be awarded in situations where establishing entitlement to damages may prove difficult,

including under claims, such as the UCL, where the necessary elements differ from those governing legal claims.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA'S FALE ADVERTISING LAW ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq***
**(On behalf of Plaintiff and the California Class)**

134. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

135. Defendant violated Cal. Bus. & Prof. Code §§ 17500 and 17501.

136. The California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*., by states, in part, that:

> It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, **which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…**

Cal. Bus. & Prof. Code § 17500. (emphasis added).

137. A separate section of the FAL, Cal. Bus. & Prof. Code § 17501, also provides:

> For the purposes of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a ***former price*** of any advertised thing, unless the alleged former price was the ***prevailing market price*** as above defined within ***three months next immediately preceding*** the publication of the advertisement of unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501. (emphasis added).

138. As used in the FAL:

(a) The term “prevailing market price” refers to the “retail price” if the offer is at retail.” *Id*.

(b) The term “advertised thing” refers to the exact same product offered—***not*** an equivalent or similar product. *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 412 (2019) (“if the advertisement specifies a precise item—say, by reference to name, brand, or other distinctive features … the market and therefore the market price is potentially determined on the basis of sales of ***that item only***.”) (emphasis added).

(c) The term “ ‘former price’ … includes but is not limited to the following words and phrases when used in connection with advertised prices: ‘formerly—,’ ‘regularly—,’ ‘usually—,’ ‘originally—,’ ‘reduced from ___,’ was ___ now __,’ ‘***___% off***.’” 4 Cal. Code Regs., § 1301 (emphasis added).

(d) The “three-month period is properly construed as a ‘rolling’ period, that is, one whose beginning and end changes each day, thus requiring a daily recalculation of the prevailing market price during the three-month period.” *People v. Superior Ct. (J.C. Penney Corp.)*, 24 Cal App. 5th 376, 416 n.26 (2019) (emphasis added).

139. Defendant violated Cal. Bus. & Prof. Code § 17500.

140. Defendant violated Cal. Bus. & Prof. Code § 17501.

141. As alleged more fully above, Defendant advertises former prices along with discounts on its websites. Defendant does this, for example, by crossing out a higher price (e.g. ~~$150~~) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices denoted as regular prices from which time-limited discounts are calculated to denote “former” prices, i.e., the prices that Defendant charges before the discount went into effect.

142. The reference prices advertised as former or regular prices on Defendant’s websites are not former or regular prices under the FAL. Defendant rarely, if ever, offered Products on the websites at the reference prices within three months immediately preceding the publication of the

reference prices. Additionally, the reference prices shown were not the prevailing market prices for the Products in the three months immediately preceding the publication.

143. Defendant did not verify that the advertised reference prices were the prevailing market prices within the preceding three months. On information and belief, Defendant had no policies or procedures to verify and update the reference prices on a daily basis.

144. Defendant's deceptive marketing practice gave consumers the false impression that the Products were regularly offered and sold for a substantially higher price in the recent past than they were, and, thus, led to the false impression that Defendant's Products were worth more than they were.

145. Defendant knew that its advertised reference prices for the Products sold on its website were untrue and/or misleading. Defendant knew that such Products had rarely, if ever, been offered or sold on the website at the reference prices.

146. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the false reference prices when purchasing Defendant's Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decisions.

147. Plaintiff relied on Defendant's false advertisements with regard to the Products, at the time of purchase.

148. As a result of Defendant's violation of the FAL, Plaintiff and Class Members suffered substantial injury and lost money.

149. Pursuant to Cal. Bus. & Prof. Code § 17535, this Court has the power to award such equitable relief, including but not limited to an order declaring the reference prices listed on Defendant's Products' to be unlawful, an order enjoining Defendant from engaging in any such further unlawful conduct, and an order directing Defendant to refund to Plaintiff and Class members all monies wrongfully collected as a result of its false advertisements.

150. Plaintiff has no adequate remedy at law to address Defendant's unlawful conduct. The legal remedies available to Plaintiff are not equally ripe, prompt, certain, efficient, or complete as equitable relief, including as to the applicable statutes of limitation, such that equitable relief may reach transactions for which no legal remedy exists. *Compare* Cal. Bus. & Prof. Code § 17208 (four-

year limitations period for unlawful conduct, including violations of the FAL) *with* Cal. Civ. Code § 1783 (three years). Whereas equitable claims may be tried by the court, legal claims are tried by jury, which may result in delay or additional expense. Further, the Court's discretion in fashioning equitable relief extends broader than legal damages and can be awarded in situations where establishing entitlement to damages may prove difficult, including under claims, such as the FAL, where the necessary elements differ from those governing legal claims.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code §§ 1750, *et seq*.)**
**(On behalf of Plaintiff and the California Class)**

151. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

152. Plaintiff and members of the Class are "consumers," as that term is defined by Civil Code § 1761(d), because they purchased Products for personal, family, or household purposes.

153. Plaintiff and Class members have engaged in a "transaction" with Defendant, as that term is defined by Civil Code § 1761(e).

154. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for purposes of the CLRA, and was undertaken by Defendant in transactions intended to result in, and which resulted in, the sale of goods or services to consumers.

155. As described more fully above, Defendant made and disseminated untrue and misleading statements of fact in its advertisements to class members. Defendant did this by using fake reference prices, i.e., reference prices that are not the prevailing market price, and/or were not the prevailing market price within the three months preceding the publication of the discount, and advertising fake discounts.

156. As a result of Defendant's conduct, Plaintiff and Class members purchased Defendant's Products for their use.

157. By engaging in the conduct described herein, Defendant has violated the following subdivision of California Code § 1770(a) by:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
>
> (9) Advertising goods or services with intent not to sell them as advertised.
>
> (13) Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.
>
> (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve.
>
> [and]
>
> (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

158. Regarding section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because (a) no true price reductions existed in that Defendant's Products were rarely, if ever, offered for sale and/or sold on the websites at the higher reference prices, let along on a regular basis within the three months immediately preceding the publication of the reference prices, (b) the reference prices Defendant advertised in connection with its Products are not prevailing market prices because, on information and belief, the Products were not sold elsewhere at the reference prices on a regular basis within the three months immediately preceding the publication of the reference prices, and (c) Defendant falsely represents the Products as on sale for a limited time when in truth it appears they are perpetually sold at the advertised "sale" prices.

159. With regard to sections 1770(a)(5), (7), and (9), Defendant advertised and represented Products on the websites with the "intent not to sell" them as advertised and misrepresenting product characteristics and standards because, as explained herein, the false reference prices advertised in connection with products offered on the website misled and continue

to mislead customers into believing the Products were previously offered for sale and/or sold on the websites at the higher reference prices during the three months preceding the advertisement.

160. With regard to sections 1770(a)(14) and (16), Defendant's misrepresentations detailed above about the discounted nature of its Products constitute a representation that the transaction involved a legitimate discount to the consumer and a representation that the consumer was receiving a product in accordance with the representation that it was discounted.

161. Defendant intended for Plaintiff and the Class to rely on its aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged above.

162. Defendant's violations of the CLRA proximately caused injury in fact to Plaintiff and the Class.

163. Plaintiff reasonably relied on Defendant's representations. Absent Defendant's misrepresentations, Plaintiff would not have purchased the item he purchased from Defendant. Plaintiff's reliance was a substantial factor in causing him harm.

164. Pursuant to Cal. Civ. Code § 1782(d), Plaintiff, individually and on behalf of the Class, seeks a Court order enjoining the above-described wrongful acts and practices of Defendant.

165. Plaintiff and Class members suffered damage as a result of Defendant's violations of Section 1770.

166. On July 15, 2026, Plaintiff's counsel sent Defendant written notice of its violations of Section 1770 by certified mail, return receipt requested pursuant to Section 1782. Defendant received the notice on July 20, 2026. The notice identified the particular violations alleged herein and demanded that Defendant correct, repair, replace, or otherwise rectify the goods and practices at issue.

167. More than 30 days have elapsed since Defendant received that notice. Defendant has failed to correct, repair, replace, or otherwise rectify the conduct described herein, and has failed to give notice to affected consumers of any intent to do so. Defendant has not made, and has not agreed to make, any of the remedies identified in Cal. Civ. Code § 1782(b). Plaintiff therefore seeks damages under the CLRA.

168. Defendant's conduct was willful, and undertaken with knowledge of its falsity and with the intent that consumers rely on it. Defendant's conduct constitutes malice, oppression, and fraud within the meaning of Cal. Civ. Code § 3294, entitling Plaintiff and the Class to punitive damages under Cal. Civ. Code § 1780(a)(4).

169. Plaintiff and the Class seek actual damages under Cal. Civ. Code § 1780(a)(1), restitution of property under § 1780(a)(3), punitive damages under § 1780(a)(4), such other relief as the Court deems proper under § 1780(a)(5), and attorneys' fees and costs under § 1780(e).

170. A CLRA venue declaration is attached.

**<u>FOURTH CAUSE OF ACTION</u>**
**BREACH OF CONTRACT**
**(On behalf of Plaintiff and the Nationwide Class)**

171. Plaintiff repeats and re-alleges all factual allegations contained in the foregoing paragraphs as if fully set forth herein.

172. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

173. Plaintiff and class members entered into contracts with Defendant when they placed orders to purchase Products on Defendant's Website.

174. The contracts provided that Plaintiff and class members would pay Defendant for the Products purchased.

175. The contracts further required that Defendant provides Plaintiff and class members with Products that have a market value equal to the regular prices displayed on the website. They also required that Defendant provide Plaintiff and class members with a discount equal to the difference between the price paid, and the regular prices advertised. These were specific and material terms of the contract.

176. The specific discounts were a specific and material term of each contract.

177. Plaintiff and class members paid Defendant for the Products they purchased, and satisfied all other conditions of their contracts.

178. Defendant breached its contracts with Plaintiff and class members by failing to provide Products that had a "regular" price, former price, and/or prevailing market value equal to

the regular price displayed on its website, and by failing to provide the promised discount. Defendant did not provide the discount that it had promised.

179. As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

**FIFTH CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On Behalf of Plaintiff and the California Class)**

180. Plaintiff and Class members incorporate the foregoing allegations as if fully set forth herein.

181. Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

182. Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendant.

183. Defendant breached the implied covenant of good faith and fair dealing by purposefully advertising their Products at a purported "discount" to encourage Plaintiff and the Class to pay a price premium, when in fact the "discount" is fictitious and Plaintiff and the Class are misled as to the true value of the Product. Defendant breached the implied covenant as well and it unfairly withheld information from Plaintiff and the Class concerning the underlying contract to purchase, and induced Plaintiff and the Class to take advantage of "discounted" pricing when no such discount was real.

184. Defendant acted in bad faith and/or with malicious motive in denying Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

185. Plaintiff and Class members incorporate the foregoing allegations as if fully set forth herein.

186. Plaintiff brings this cause of action on behalf of himself and the Class.

187. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Products and to pay a price premium for these Products.

188. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

189. Plaintiff and the class seek restitution.

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL MISREPRESENTATION**
**(On Behalf of Plaintiff and the California Class)**

190. Plaintiff and the Class members incorporate the foregoing allegations as if fully set forth herein.

191. Plaintiff brings this cause of action on behalf of himself and the Class.

192. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised.

193. These representations were false.

194. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

195. Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

196. In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the Products.

197. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

198. Plaintiff and Class members were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased Products if they had known that the representations were false, and/or (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff and members of the Class respectfully request that the Court:

a. Certify this case as a class action, designating Plaintiff as class representatives and designating the undersigned as Class Counsel;
b. Declaring that Defendant's conduct violates the statutes set forth above;
c. Award Plaintiff and the Class restitution in an amount to be proven at trial;
d. Award Plaintiff and the Class pre-judgment interest in the amount permitted by law;
e. Award Plaintiff and their attorneys fees and costs as permitted by law;
f. Declare Defendant's practices outlined herein to be unlawful;
g. Grant equitable and/or injunctive relief, including to enjoin Defendant from engaging in the practices outlined herein;
h. Grant Plaintiff and the Class a trial by jury;
i. Grant leave to amend these pleadings to conform to evidence produced at trial; and
j. Grant such other relief as the Court deems just and proper, including all forms of relief provided for under the UCL, CLRA, and FAL.

**JURY DEMAND**

Plaintiff, by counsel, demand a trial by jury.

Dated: August 21, 2026

Respectfully Submitted,

*/s/ Victor J. Sandoval*

**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd. Ste 1121
Los Angeles, CA 90034
Tel: (916) 241-3568
victor@almeidalawgroup.com

**JENNINGS & EARLEY PLLC**
Christopher D. Jennings*
Tyler E. Ewigleben*
Winston S. Hudson*
500 President Clinton Ave., Suite 110
Little Rock, AR 72201
Tel: (501) 255-8569
chris@jefirm.com
tyler@jefirm.com
winston@jefirm.com

* *Pro Hac Vice* forthcoming

*Counsel for Plaintiff and the Proposed Class*

**Affidavit Pursuant to Civil Code Section 1780(d)**

I, VICTOR J. SANDOVAL, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts of the State of California. I am one of the counsel of record for Plaintiff.

2. This declaration is made pursuant to § 1780(d) of the California Consumers Legal Remedies Act.

3. Defendant EcoFlow Technology, Inc. has done, and is doing, business in California, including in this District. Such business includes the marketing, promotion, distribution, and sale of the Products within the State of California.

4. Plaintiff alleges that he purchased one of the products at issue in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed August 21, 2026 at Los Angeles, California.

Dated: August 21, 2026

Respectfully Submitted,

*/s/ Victor J. Sandoval*

**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd. Ste 1121
Los Angeles, CA 90034
Tel: (916) 241-3568
victor@almeidalawgroup.com